PEOPLE, PLAINTIFF AND APPELLEE, *v.* RIVERA ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the First District Court of San Juan in a Prosecution for Adulteration of Milk.

No. 2031.—Decided March 26, 1923.

ADULTERATED MILK—JUDICIAL NOTICE. — Although generally the courts can not take judicial notice of the regulations promulgated by the different departments of the Government, yet by the express provision of section 15 of Act No. 81 of 1912 to reorganize the sanitation service they are required to take

judicial notice of the regulations of the Department of Sanitation which prescribe the standard for determining what is adulterated milk for the purposes of the law penalizing its adulteration and sale.

The facts are stated in the opinion.

*Messrs. R. Sancho Bonet* and *E. Campillo* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

In this case Eduardo Zayas Rivera and José Víctor Rivera were charged with the adulteration of milk. The defendants were tried and the court sentenced them to 5 and 15 days in jail, respectively, whereupon they took the present appeal.

The only error assigned by appellant José Víctor Rivera in his brief is that "the court did not have before it the necessary evidence to convict the defendant." The said assignment refers to the fact that the Government did not produce at the trial evidence of the regulations published by the Department of Health showing the legal standard according to which milk may be lawfully sold. This amounts to saying that courts can not take judicial notice of the regulations promulgated by the Department of Health, and that is the only question raised in this appeal. In support of that theory the appellant cites the decisions of this Supreme Court in *People* v. *Cuadrado,* 27 P. R. R. 767, and *People* v. *Garau & Co.,* 29 P. R. R. 970.

Section 1 of the Act to provide a punishment for adulterating milk or offering or keeping the same for sale, approved March 10, 1910, reads as follows:

"Every person who adulterates or dilutes milk with the intent to offer the same for sale, or cause or permit it to be offered for sale, and every person who sells, offers or keeps the same for sale, is guilty of a misdemeanor and shall be punished by imprisonment in jail not exceeding one month, and in addition to such punishment

the adulterated milk shall be confiscated; * * *. The adulteration or dilution of milk may be proved in the usual manner provided by law for the trial of criminal cases, but in any event milk shall be deemed and held to be adulterated or diluted when the same does not conform to the standard that shall be prescribed by the competent authorities; *Provided,* That the standard of milk shall be fixed by the Director of Health, Charities and Correction, and published for general knowledge in the Official Gazette and in the newspapers having the largest circulation in the Island, which shall be determined by the said official.''

For the purpose of complying with that statute the Government presented, in order to prove that the the milk offered for sale by the defendants was adulterated, the testimony of the chemist of the Insular Laboratory, Rafael del Valle Sárraga, who said that the milk ''was analyzed and the analysis showed that it was adulterated with approximately 20 percent of water.''

In order to determine the fact of the adulteration the chemist referred to the standard established by the Department of Health in its regulations, and on this point he replied to questions put by the defendant as follows: ''That the standard established by the Department of Health varies with regard to fat, but establishes 3% as the minimum, total solids in the analysis 10.35%, and the analysis showed that 20% of water had been added. From the analysis the amount added was 89654, the maximum amount of the standard is 88%, and the amount under the analysis was 89.654.''

As we have seen, section 1 of the Act relative to the adulteration of milk, etc., *supra,* is the statute which provides that the standard of milk shall be fixed by the Director of Health, and further prescribes the manner in which this regulation shall be promulgated.

After the enactment of that Act and in accordance with

Act No. 81 of March 14, 1912, to reorganize the sanitation service, Bulletin No. 29 to regulate dairies, milk-stands and the sale of milk was promulgated and articles 9 and 10 thereof read as follows:

"Article 9.—No milk shall be sold, offered for sale or put on sale, transported, imported or stored for sale in the Island of Porto Rico,

"(*a*) Containing less than 12% of milk solids.

"(*b*) Containing more than 88% of water.

"(*c*) Containing less than 3% of milk fats.

"(*d*) Having a specific gravity of less than 1.030.

"(*e*) Containing any dirt, foreign matter or sediment.

"(*f*) Containing any boracic or salycylic acid, formaldehyde, or other foreign chemicals.

"(*g*) Containing any pathogenic bacteria.

"(*h*) Containing any bacteria of any kind, more than 500,000 per cubic centimeter."

"Article 10.—All milk not corresponding to this standard, shall be considered, to the effects of this regulation, as adulterated and unfit for consumption;  *  *  * "

And Act No. 81 establishing the standard of milk and under which the said regulation was put in force provides in section 13 the following:

"That the Director of Sanitation shall submit to the Executive Council, for its consideration and approval, all rules and regulations prescribed by the Insular Board of Health, endorsing thereon his views.  *  *  *  All such rules and regulations, when approved by the Executive Council, shall be promulgated by the Governor of Porto Rico and shall be published in two newspapers of general circulation in the Island, and thereupon and thereafter shall have the force and effect of law."

It is clear, therefore, that the standard of milk for the purposes of distinguishing between pure milk and adulterated milk has been determined in accordance with the requirements of the statute and that the regulation must be

considered to have the force and effect of law in the form in which it was adopted by the Department of Health. However, the question raised by the appellant and on which is based all of the argument contained in his brief is that notwithstanding the force of law of such regulations, the courts can not take judicial notice of them, alleging that the trial court erred in convicting the defendant in view of the failure of the Government to produce evidence of the existence of such regulations. But it seems that it was the intention of our Legislature not only to punish with severity all persons guilty of selling or having for sale adulterated milk, but also to avoid impunity through mere technicalities, and, in view of the salutary purposes of the law, it provided in a positive manner that courts of justice should take judicial notice of the said rules and regulations in section 15 of the Act, as follows:

"That all courts are required to take judicial notice of the adoption of such rules and regulations and of the publication thereof required by this Act."

In the face of such a provision it is unnecessary to discuss the cases cited by the appellant in his brief, inasmuch as the first refers to decisions of the Food Commission and the second to regulations promulgated by the Chief of the Bureau of Weights and Measures, and considering the special enactment as to the rules and regulations of the Department of Health, those cases are not applicable to the present case.

For the foregoing reasons the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.